T.C. Memo. 1997-250

UNITED STATES TAX COURT

JOHN E. AND CONCETTA LOZON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22764-94.                    Filed June 4, 1997.

<u>V. Jean Owens</u>, for petitioners.

<u>G. Michelle Ferreira</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following

deficiencies in petitioners' Federal income taxes:

| Year | Deficiency |
|------|-----------|
| 1989 | $1,843 |
| 1990 | 4,379 |
| 1991 | 10,784 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are:

(1) Whether petitioners performed services for Allstate Insurance Co. (Allstate) as employees or as independent contractors during the years at issue; and, if we find that petitioners were independent contractors, then

(2) whether contributions made by Allstate to its pension plan and the Sears (Allstate's parent company) Savings and Profit Sharing Fund (hereinafter respectively referred to as the pension plan and the profit sharing fund, and collectively as the plans) on behalf of Mrs. Lozon are taxable to her when vested; and

(3) whether petitioners should be credited with payroll taxes withheld from their income by Allstate and with payroll taxes paid by Allstate (employer's matching portion) in calculating petitioners' self-employment tax liability.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits, together with a supplemental stipulation of facts, are incorporated herein by this reference. Petitioners resided in Gilroy, California, at the time the petition in this case was filed.

Mrs. Lozon (sometimes referred to as petitioner) has been associated with Allstate since October 14, 1985, and Mr. Lozon has been associated with Allstate since July 14, 1989, the respective dates that they entered into Agent Employment Agreements (AE agreements) with Allstate. Petitioners' AE agreements were, in all material respects, similar to the agreement[1] described in Butts v. Commissioner, T.C. Memo. 1993-478, affd. per curiam 49 F.3d 713 (11th Cir. 1995).

Petitioners were Neighborhood Office Agents (NOA's) during the years in issue.[2] The NOA concept was promoted by Allstate as a means of becoming an entrepreneur, having one's own office, and being one's own boss. Petitioners' relationship with Allstate was governed by the AE agreement and the Neighborhood Office Agent Amendment to the Allstate Agent Compensation Agreement (NOA amendment). Such amendment was in all material respects similar to the NOA amendment described in Butts v. Commissioner, supra.

---

[1] The parties stipulated that "petitioner's Allstate Agent Employment Agreement was in all material respects similar to Dan Butts' Allstate Employment Agreement, as described in [Butts]." In Butts v. Commissioner, T.C. Memo. 1993-478, affd. per curiam 49 F.3d 713 (11th Cir. 1995), the taxpayer entered into an "Allstate Agent Compensation Agreement"; the opinion makes no reference to an "Allstate Agent Employment Agreement". Although petitioners later entered into an "NOA amendment to Allstate Compensation Agreement", there is no reference in the record to petitioners having entered into an "Allstate Compensation Agreement". See infra. We interpret the parties' stipulation to mean that petitioners' written agreements with Allstate were in all material respects similar to the taxpayer's in Butts.

[2] Unless otherwise indicated, descriptions of petitioners' business pertain to the years in issue.

The NOA amendment provided that the AE agreement remained unchanged, except as modified by the NOA amendment. The NOA amendment stated that petitioners continued to be full-time employees of Allstate.

The Neighborhood Office Agent Manual (NOA manual) was a written text of rules and procedures provided by Allstate during the 1989, 1990, and 1991 tax years. The Allstate NOA manual was, in all material respects, similar to the NOA manual described in Butts v. Commissioner, supra. Allstate gave petitioners a copy of the NOA manual. The NOA amendment provided that petitioners remained under the supervision of sales management and would attend Allstate training. Petitioners believed that the NOA manual was basic material on how to run a business, and, since they knew how to run a business, Mr. Lozon discarded it.

Petitioners' relationship with Allstate could be terminated at will by either Allstate or petitioners.

An Allstate agency manager performed annual business analysis reviews (reviews) of petitioners. These reviews rated petitioners' productivity, quality, retention, program support, customer service, administration, and overall role. These reviews rated petitioners on whether they exceeded, met, needed improvement, or required immediate improvement in the categories rated by the Allstate agency manager. The reviews were 5-minute meetings with the Allstate agency manager once a year in which

the discussion centered on whether the sales expectations for the year had been met.

The day-to-day business operations of petitioners' Allstate insurance business and the day-to-day interactions of petitioners with Allstate were essentially the same as the day-to-day business operations and the day-to-day interactions of the taxpayer and Allstate as described in Butts v. Commissioner, supra.

When she started her business, Mrs. Lozon searched for and secured an office location. Mrs. Lozon signed a lease (Allstate approved the lease to assure that it had no liability on the lease), set up an office, opened her doors, and started to prospect for clients. Mrs. Lozon advertised extensively in newspapers and spent money, some of it reimbursed by Allstate, in an effort to increase her business. The business grew quickly, and Mr. Lozon joined Mrs. Lozon in the business. Mrs. Lozon moved to a larger office in 1989 and incurred additional expenses to remodel the new facility.

Even while the business was growing, there was always a possibility of petitioners' incurring a loss. Commissions were petitioners' only source of income. Petitioners were permitted, with Allstate's consent, to sell non-Allstate insurance products. Petitioners personally bore the obligation to pay for most of their business expenses, including office rent, utilities, telephone, and personnel. Petitioners were reimbursed by

Allstate for a percentage of their business expenses under a formula known as the Office Expense Allowance (OEA). Expenses reimbursed from the OEA included the following: (1) Support staff; (2) sales location rent; (3) maintenance; (4) utilities; and (5) telephones. Allstate paid petitioners' malpractice insurance and State licensing fees during 1989, 1990, and 1991.

Allstate provided petitioners with some office furniture, such as a desk, a side chair, a swivel chair, and a filing cabinet. The office furniture provided by Allstate to petitioners was not petitioners' property but remained the property of Allstate. Allstate provided petitioners with standard advertising signs, and they were also eligible to participate in cooperative advertising through Allstate.

The success of petitioners' business was due mainly to the personality, ability to sell, entrepreneurial spirit, hard work, knowledge of the product, and desire to succeed on the part of the Lozons, particularly Mrs. Lozon.

Since Allstate treated them as employees, petitioners were allowed to participate in the Sears profit sharing fund. Allstate made contributions of $89 and $139 on behalf of Mrs. Lozon to the profit sharing fund for the years 1990 and 1991, respectively.

Allstate also allowed petitioners to participate in its pension plan. Allstate made contributions of $1,674 and $2,319 on behalf of Mr. Lozon into Allstate's pension plan for the years

1990 and 1991, respectively. Allstate made contributions of $9,020 and $8,393 on behalf of Mrs. Lozon into Allstate's pension plan for the years 1990 and 1991, respectively. Mr. Lozon had no vested interest in the pension plan during 1990 or 1991. Mrs. Lozon's vested interest in the plan was zero in 1989, $13,193 in 1990, and $16,843 in 1991.

The payments made by Allstate on behalf of petitioners to the plans for the years 1989, 1990, and 1991 were excluded from petitioners' gross income (the payments were not reported on the Forms W-2 given to petitioners, and petitioners did not report the payments as income on their tax returns).

Compensation paid to petitioners from Allstate in the amounts of $164,998, $230,152, $255,993 was reported by Allstate on Forms W-2 as wages paid to petitioners for 1989, 1990, and 1991, respectively. Allstate withheld income and Social Security taxes from petitioners' wages. Petitioners reported these amounts as wages on their 1989, 1990, and 1991 joint Federal income tax returns (tax returns).

Petitioners claimed business expenses in the amounts of $72,204, $99,669, and $114,669 on Schedule C of their tax returns for 1989, 1990, and 1991, respectively.

Petitioners paid no self-employment tax for 1989, 1990, and 1991.

On August 1, 1992, petitioners signed a Neighborhood Exclusive Agency Agreement (NEA agreement) with Allstate which

superseded and replaced their prior AE agreement as amended by the NOA amendment. Under the NEA agreement, petitioners and Allstate agreed that petitioners' association with Allstate would be an independent contractor relationship effective August 1, 1992. OPINION

A.    Employee Versus Independent Contractor

We have examined on three separate occasions whether taxpayers working under similar NOA agreements are independent contractors or employees. Mosteirin v. Commissioner, T.C. Memo. 1995-367; Smithwick v. Commissioner, T.C. Memo. 1993-582, affd. per curiam sub nom. Butts v. Commissioner, 49 F.3d 713 (11th Cir. 1995); Butts v. Commissioner, T.C. Memo. 1993-478, affd. per curiam 49 F.3d 713 (11th Cir. 1995) (the Allstate cases). The parties agree that the facts of this case are essentially indistinguishable from Butts v. Commissioner, T.C. Memo. 1993-478.

Although respondent argues that eight factors[3] commonly analyzed by the Tax Court support a holding that petitioners are Allstate's employees, she focuses on Allstate's right to control

---

[3]    (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the individual for profit or loss; (4) whether the principal has the right to discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; (7) the relationship the parties believe they are creating; and (8) whether fringe benefits are provided. Weber v. Commissioner, 103 T.C. 378 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995).

petitioners based on the rules, regulations, and procedures set forth in the NOA amendment and NOA manual.  Respondent argues that Allstate's disciplinary procedures and annual reviews of petitioners provided it with the opportunity to enforce its rules, regulations, and procedures.

Petitioners contend that this issue has already been decided by this Court, that Butts and Smithwick control.  Respondent counters that in prior cases (Butts, Smithwick, and Mosteirin) "the Tax Court correctly articulated the applicable legal standard in an employee versus independent contractor dispute as one of the right to control", but did not apply the test correctly.  Respondent is half-right.

As the Court stated in Mosteirin:

> In Butts and Smithwick, we concluded that the taxpayers were professionals associated with Allstate as independent contractors * * *.  In Butts we made detailed findings of fact and addressed the legal arguments at some length.  We found:  (1) The taxpayer exercised a high degree of control over the manner in which he operated his business; (2) the taxpayer personally incurred most of his business expenses; and (3) the taxpayer bore the burden of risk of loss from his business.  In making these findings, we noted that we were not persuaded by the fact that the agreement between Allstate and the taxpayer referred to the taxpayer as an employee or the fact that the taxpayer reported his Allstate income as wages on his Federal income tax return.  Rather, we focused on the actual contractual relationship between the contracting parties. * * * [Mosteirin v. Commissioner, supra at 308.]

We dealt with respondent's assertion that the annual review process showed that Allstate had the right to control NOA's in Mosteirin:

The actions taken by Allstate in the case at hand did not amount to the exercise of power by Allstate as to the affirmative manner in which petitioner tried to sell insurance to customers on a day-to-day basis, but were designed to deal prospectively with various quality issues and with specific quality problems after they had arisen. * * * [Id.]

The above analysis holds true in this case. The parties have stipulated that this case has the same essential facts as Butts. We find that there are no essential facts in the instant case distinguishable from those presented in Butts and no legal arguments presented by respondent in the instant case that were not addressed and rejected in Butts and Mosteirin. Thus, on the basis of our reasoning in Butts v. Commissioner, supra, as adopted and applied in Smithwick v. Commissioner, supra, and Mosteirin v. Commissioner, supra, we conclude that during the years in issue petitioners were professionally associated with Allstate as independent contractors. In short, we decline respondent's offer to revisit an area that has been so thoroughly explored.

B.  Burden of Proof on Remaining Issues

Unlike the prior Allstate cases,[4] the ramifications of petitioners' being treated as independent contractors--as opposed to employees--are in dispute. Issue number 2, supra and discussed below, was raised by respondent in his answer to the petition. Consequently, respondent bears the burden of proof on this issue. Rule 142(a).

---

[4]  See infra.

C.    Taxability of Contributions by Allstate to the Plans

    1.    Petitioners' Arguments

In response to respondent's position that Allstate's contributions to the plans are includable in Mrs Lozon's gross income for 1990 and 1991 to the extent the contributions were vested during those years, petitioners point out that respondent concedes that the pension plan was qualified under section 401 and the corresponding trust was exempt under section 501(a) during the years at issue[5].  Citing section 402(a), petitioners argue that they should not be taxed until the proceeds are distributed to them from the pension plan trust since Allstate treated them as covered under the pension plan.  Petitioners state "A subsequent reclassification of Mrs. Lozon as an independent contractor had no effect on her participation in the Plan since she continued to qualify as an agent of Allstate."

Petitioners cite section 401(c) as authority for the proposition that self-employed persons can be participants of qualified plans.  Petitioners also argue that respondent did not question the qualification status of plan participants when contributions were made and that "It would be unjust to find that such contributions that have not been distributed to [petitioner], and will not be distributable to her until she reaches retirement age, is [sic] taxable to her".

---

    [5]   See infra note 6.

Petitioners further argue that they could have had dual status: Independent contractors for income tax purposes and employees for pension plan purposes. Petitioners claim "In essence, this Court has already considered the pension issue [citing Butts v. Commissioner, supra] and, as dicta, agreed that these NOA's may be employees 'for pension and fringe benefit purposes' although they were independent contractors for the expense deduction purposes." Petitioners cite Ware v. United States, 850 F. Supp. 602 (1994), affd. 67 F.3d 574 (6th Cir. 1995), as supporting the dual status concept. As further support for their dual status argument, petitioners argue that sections 7701(a)(20) and 401(c) allow full-time life insurance agents to be treated as independent contractors for some purposes but as employees for pension purposes and that cases involving separation from service provide additional support.

Petitioners further argue that section 83 does not provide support for taxing them (as respondent argues) since section 83(e) provides that section 83 shall not apply to "a transfer to or from a trust described in Section 401(a)".

2. Respondent's Arguments

Respondent argues that petitioners cannot use section 402(a) to defer recognition of income since they are not employees of Allstate. Section 402(a)(1) refers to "the amount actually

distributed to any distributee by any employees' trust described in section 401(a)".  Respondent argues that petitioners cannot be proper distributees of the trusts since petitioners are independent contractors not employees.  In respondent's view the trusts would violate the "exclusive benefit rule" provided for in section 401(a)(2) if they included nonemployees such as petitioners.  While agreeing that the pension plan and corresponding trust were qualified[6] for the years in issue and the plans are not parties to this action, respondent nevertheless argues that petitioners are not "qualified participants" in either plan.

Respondent argues that petitioners should be taxed pursuant to section 83(a), which taxes property transferred to an employee or an independent contractor in connection with the performance of services.  In his reply brief, for the first time, respondent contends that the economic benefit doctrine provides a legal basis for taxing petitioner.

Respondent further argues that petitioners may not be independent contractors for income tax deduction purposes and employees for pension plan purposes.  Respondent argues that petitioners' reliance on Butts v. Commissioner, supra, and Ware v. Commissioner, supra, is misplaced and that their reading of

---

[6]  Petitioners did not request such a finding of fact as to the profit sharing fund.  Respondent, however, does refer to "the qualified plans at issue" on brief.

section 401(c) as supporting dual classification is erroneous. Finally, respondent argues that the separation from service cases are irrelevant to the case at hand.

3.  Analysis

Allstate included Mrs. Lozon in their pension plan and the profit sharing fund because they considered her to be an employee.[7]  We held, supra, that petitioners' relationship to Allstate was that of an independent contractor and not that of an employee.  Petitioners argue that Mrs. Lozon can, nevertheless, avoid current taxation on amounts vested in the pension plan because respondent agrees that the pension plan was qualified under section 401 and the trust was exempt under section 501(a). Respondent wants to remove the "bad apples" from Allstate's pension plan "barrel" without advocating that the plans themselves be disqualified.  As respondent states on brief, "The qualified plans at issue defer the current receipt of income of employee Agents of Allstate, but cannot defer income of non-employee independent contractors."  Respondent, however, does not suggest a statutory framework to remove the bad apples (the people who have been mistakenly included in the pension plan).

Respondent determined that the contributions made on behalf of Mrs. Lozon should be income to her when vested.  Petitioners

---

[7]  The contributions made to the pension plan on behalf of Mr. Lozon are not at issue because he was not vested during the years in issue.  Mr. Lozon did not participate in the profit sharing fund.

argue that section 402(a), which governs the taxability of beneficiaries of exempt trusts, provides that taxpayers should not be taxed until they receive distributions from such trusts. Petitioners cite section 1.402(a)-1(a)(1)(i), Income Tax Regs., which provides:

> Section 402 relates to the taxation of the beneficiary of an employees' trust.  If an <u>employer</u> makes a contribution for the benefit of an <u>employee</u> to a trust described in section 401(a) * * * the employee is not required to include such contribution in his income except for the year * * * in which such contribution is distributed or made available to him. * * * [Emphasis added.]

Since petitioner was not an employee of Allstate, the above regulation does not apply to her.

Respondent argues that section 83 provides the support for taxing petitioner.  Section 83 reads, in part:

> SEC. 83. PROPERTY TRANSFERRED IN CONNECTION WITH PERFORMANCE OF SERVICES.
>
> (a) General Rule.--If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of--
>
>> (1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over
>>
>> (2) the amount (if any) paid for such property,

shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. * * *

Section 1.83-1(a)(1), Income Tax Regs., provides that such property is not taxable under section 83 until it (1) has been transferred, and (2) becomes substantially vested in such person. Section 1.83-3(a), Income Tax Regs., provides that property is transferred when the person acquires a beneficial ownership in such property. Section 1.83-3(e), Income Tax Regs., provides that "property" under section 83 "includes a beneficial interest in assets (including money) which are transferred or set aside from the claims of creditors of the transferor, for example, in a trust or escrow account." The record as a whole establishes that the contributions in issue were transferred in connection with the performance of services by Mrs. Lozon. It is stipulated that Allstate made contributions under the profit sharing fund to a trust for the benefit of Mrs. Lozon in the amounts of $89 in 1990 and $140 in 1991. These amounts were vested when made. It is also stipulated that Allstate made contributions under its pension plan to a trust for the benefit of Mrs. Lozon and that she was vested in the amounts of $13,193 in 1990 and $16,843 in 1991.[8] Therefore, unless an exception applies, Mrs. Lozon would

_____

[8] Mrs. Lozon had no portion of the pension plan vested in 1989.

be taxable on $13,282 ($13,193 + $89) in 1990 and $3,790 ($16,843 - $13,193 + $140) in 1991.

Section 83(e)(2) provides for an exception to the above rule. Respondent argues that the exception does not apply. The relevant portion of section 83(e) provides:

> (e) Applicability of Section.--This section shall not apply to--
>
>     *    *    *    *    *    *    *
>
>     (2) a transfer to or from a trust described in section 401(a) * * *

Section 401(a) provides, in part:

> (a) Requirements for Qualification.--A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section--
>
>     *    *    *    *    *    *    *
>
>     (2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries * * *

Respondent argues that the trusts were in violation of section 401(a)(2), and the section 83(e)(2) exception therefore does not apply. Respondent also argues that Mrs. Lozon was not a "qualified participant" in the plan (a requirement of the pension plan itself) since she was not an employee. Respondent's

arguments are variations of the same theme, that "the fundamental condition of income deferral in qualified plans [is] that such deferral is accorded only to employee participants. Sections 401(a), 401(b), 402."

The section 83(e)(2) exception only requires that there be "a transfer to or from a trust described in section 401(a)". Respondent concedes that the pension plan and profit sharing fund were qualified under section 401(a) and the respective trusts were exempt under section 501(a) for all the years in issue. We have held, supra, that the contributions in issue were transferred to the respective trusts in connection with the performance of services by petitioner. Consequently, the requirements of section 83(e)(2) have been met; petitioner is exempt from section 83(a). Respondent cannot simultaneously argue that the trusts were in violation of section 401(a)(2) while conceding that the pension plan and profit sharing fund were qualified plans under section 401(a). The positions are mutually exclusive; respondent is bound by his concession.

Respondent, in his reply brief, argues that the economic-benefit doctrine[9] provides a legal basis for taxing petitioner. In Berkery v. Commissioner, 91 T.C. 179 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989) we stated:

---

[9] This is sometimes known as the "economic-benefit theory".

It is well established that respondent may rely upon a theory if [he] has provided petitioner with "fair warning" of [his] intention to proceed under that theory. Leahy v. Commissioner, 87 T.C. 56, 64 (1986); Schuster's Express, Inc. v. Commissioner, 66 T.C. 588, 593 (1976), affd. per curiam 562 F.2d 39 (2d Cir. 1977); Rubin v. Commissioner, 56 T.C. 1155, 1163 (1971), affd. 460 F.2d 1216 (2d Cir. 1972). "Fair warning means that respondent's failure to give petitioner notice of [his] intention to rely on a particular theory in the statutory notice of deficiency or the pleadings, must not have caused harm or prejudice to petitioner in petitioner's ability to prepare [their] case." William Bryen Co. and Subsidiaries v. Commissioner, 89 T.C. 689 (1987). See also Schuster's Express v. Commissioner, supra at 593-594; Rubin v. Commissioner, supra at 1163. In Leahy, we recognized that an argument may not be made for the first time on brief unless it is shown that there is neither surprise nor need for additional evidence to be presented. * * * [Fn. ref. omitted.]

Respondent first made the economic-benefit argument in his reply brief. Respondent has not shown that there "was neither surprise nor need for additional evidence to be presented." Therefore, we will not consider this argument.

As respondent has not proven that petitioner is taxable on the contributions when vested, we hold for petitioners on this issue. We need not, therefore, address petitioners' dual status arguments.

D.  Calculation of Self-Employment Taxes Due

Allstate treated petitioners as employees during the years in issue. The Federal Insurance Contributions Act (FICA), secs. 3101-3125, 68A Stat. 415 (1954), taxes a portion of the wages paid to an employee (FICA tax). The portion of the wages taxed is defined in section 3121(a). Under FICA, the employer and the

employee each pays a like amount of tax.  See secs. 3101, 3111.
The employer withholds the employee's half of the FICA tax and
remits it, along with the employer's half, to the Treasury
Department.  See sec. 3102.  Allstate withheld FICA taxes from
petitioners and paid both halves over to the Treasury Department
for the years in issue.

Independent contractors are not subject to the FICA tax;
however, they are subject to a Self-Employment Contributions Act
of 1954, secs. 1401-1403, 68A Stat. 353, tax (SECA tax).  See
secs. 1401, 1402.  The SECA tax is a different tax from the FICA
tax, though the SECA tax rate is equal to the sum of the employer
and employee tax rates under FICA.  The parties agree that if
petitioners are held to be independent contractors, then they are
liable for SECA tax on their net earnings.

Petitioners argue that they owe no SECA tax because Allstate
and petitioners paid the full amount of the FICA tax due for the
years in issue and that amount equals the SECA tax due.
Petitioners also argue that their "wages" (compensation paid by
Allstate that was reported as wages) should be subtracted from
net earnings from self-employment to arrive at self-employment
income under section 1402(b), again resulting in no SECA tax due.
Petitioners finally cite the mitigation provisions of section
6521 for the proposition that they should be credited with
Allstate's share of the FICA taxes paid on petitioners' "wages".

Respondent correctly points out that if petitioners are considered to be independent contractors, then the compensation paid to them by Allstate could not be considered FICA wages as defined under section 3121(a). Respondent argues that petitioners cannot claim credit toward their SECA tax liability for the "employer's" portion of the FICA taxes paid by Allstate. Respondent further argues that petitioners may not reduce their SECA tax liability by the "employee's" portion of the FICA taxes erroneously paid on their behalf by Allstate unless the statute of limitations has expired for petitioners' claim for refund of the improperly paid FICA taxes, citing section 6521.

Petitioners may not claim credit for Allstate's portion of the FICA taxes. Section 3111 imposes a tax on employers; petitioners have no right to claim Allstate's potential tax refund. Section 6521 offers no support for petitioners' claim. It deals exclusively with SECA tax and "the tax imposed by section 3101 (relating to tax on employees under the Federal Insurance Contribution Act)". (Emphasis added.) Cf. sec. 3111. Petitioners have misread section 6521.

Petitioners may not reduce their self-employment income by the compensation paid them by Allstate under section 1402(b). Section 1402(b) only allows such a reduction for "wages". Section 3121(a) defines "wages" as "all remuneration for employment". "Employment", for this situation, is defined by section 3121(b) as "any service, of whatever nature, performed

(A) by an <u>employee</u>". (Emphasis added.) Since petitioners were not employees, they cannot have received wages from Allstate. Again, petitioners have misread the statute.

Other than section 6521, there is no authority for offsetting SECA taxes with erroneously paid FICA taxes. With certain exceptions not relevant to this case, section 6521 provides for the mitigation of the effect of the expiration of the period of limitations in certain cases in which self-employment income is incorrectly classified as wages and FICA taxes are paid (the case at bar), or wages are incorrectly classified as self-employment income and self-employment taxes are paid. If the correction of the error would require the refund or credit of one tax and the assessment of the other, and if the period of limitations has expired as to only one of the taxes in question, then the one tax may be credited against the other despite the expiration of the period of limitations. Section 6521(a) provides:

> (a) Self-Employment Tax and Tax on Wages.--In the case of the tax imposed by chapter 2 (relating to tax on self-employment income) and the tax imposed by section 3101 (relating to tax on employees under the Federal Insurance Contributions Act)--
>
> > (1) If an amount is erroneously treated as self-employment income, or if an amount is erroneously treated as wages, and
> >
> > (2) If the correction of the error would require an assessment of one such tax and the refund or credit of the other tax, and

(3) If at any time the correction of the error is authorized as to one such tax but is prevented as to the other tax by any law or rule of law (other than section 7122, relating to compromises),

then, if the correction authorized is made, the amount of the assessment, or the amount of the credit or refund, as the case may be, authorized as to the one tax shall be reduced by the amount of the credit or refund, or the amount of the assessment, as the case may be, which would be required with respect to such other tax for the correction of the error if such credit or refund, or such assessment, of such other tax were not prevented by any law or rule of law (other than section 7122, relating to compromises).

Respondent agrees, on brief, that petitioners may offset their SECA tax liability by their portion of FICA tax payments to the extent allowed by section 6521. Consequently, we leave it to the parties to compute the amount of the offset in their Rule 155 computation.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.